1

2

3

4

5          UNITED STATES DISTRICT COURT

6          EASTERN DISTRICT OF WASHINGTON

7   MICHAEL P.,

8                              Plaintiff,          NO. 4:23-CV-5090-TOR

9          v.                                      ORDER AFFIRMING DENIAL OF
                                                   TITLE II BENEFITS
10  KILOLO KIJAKAZI, Acting
    Commissioner of the Social Security
11  Administration,

12                              Defendant.

13          BEFORE THE COURT is Plaintiff's motion seeking a reversal of the Social

14  Security Commissioner's denial of benefits (ECF No. 7).  The Court has reviewed

15  the administrative record and the parties' completed briefing, and is fully informed.

16  For the reasons discussed below, the Court **DENIES** Plaintiff's motion and

17  **AFFIRMS** the final order of the Social Security Commissioner denying benefits.

18                              **JURISDICTION**

19          The Court has jurisdiction over this case under 42 U.S.C. § 405(g).

20  //

ORDER AFFIRMING DENIAL OF TITLE II BENEFITS ~ 1

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation

omitted).  The appellant generally bears the burden of establishing harm.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 404.1520(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner will find that the claimant is not disabled.  20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe, or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity ("RFC"), generally defined as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 404.1545(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work and (2) that such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.1560(c).

### ALJ'S FINDINGS

On January 21, 2021, Plaintiff applied for Title II disability benefits, alleging a disability onset date of September 8, 2020, which was later amended to December 1, 2020. Tr. 22, 210. Plaintiff's application was denied both initially and upon reconsideration. Tr. 94, 100. On March 8, 2022, a telephonic hearing was held before an administrative law judge (ALJ). Tr. 41. On March 28, 2022, the ALJ denied Plaintiff's claim. Tr. 22.

As a threshold matter, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2026. Tr. 24. At step one of the sequential evaluation analysis, the ALJ found Plaintiff had not engaged in substantial gainful activity since the amended onset date of December 1, 2020. *Id.* At step two, the ALJ found Plaintiff had the following severe impairments: moderate multilevel spondylosis, diabetes mellitus, rheumatoid arthritis, status post rotator cuff injury, meniscal knee tear, and obesity. *Id.* At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. *Id.* The ALJ then found Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), but stipulated:

> The claimant can perform occasional postural activities but never climb ladders, ropes or scaffolds. The claimant should avoid more than moderate exposure to hazards (such as unprotected heights and dangerous moving machinery).

Tr. 27.

At step four, the ALJ found Plaintiff was incapable of performing past relevant work as a corrections officer.  Tr. 33.  At step five, the ALJ found that, considering Plaintiff's age, education, past work experience, and RFC, as well as testimony from a vocational expert (VE), there were jobs existing in significant numbers in the national economy which Plaintiff could perform, such as a small products assembler and a routing clerk.  Tr. 33-34.

Based on the foregoing analysis, the ALJ concluded Plaintiff was not disabled as defined in the Social Security Act from the date of amended onset through the date of her decision.  Tr. 34.  On April 20, 2023, the Appeals Council denied review, making the decision of the ALJ the final decision of the Commissioner for purposes of judicial review.  Tr. 6; *see also* 20 C.F.R. §§ 404.981, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's decision denying him disability insurance benefits under Title II of the Social Security Act.  Plaintiff submits the following issues for this Court's review:

1. Whether the ALJ's decision to discredit Plaintiff's physical symptom testimony was supported by specific, clear, and convincing evidence; and

1    2. Whether the ALJ applied the correct legal standard in evaluating certified

2    Physician Assistant (PA) Cameron Ritchie's report.

3    ECF No. 7 at 1-2.

4    **DISCUSSION**

5    **I.    Physical Symptom Testimony**

6    Plaintiff contends that the ALJ's decision to discredit his physical symptom

7    testimony was unsupported by specific, clear, and convincing evidence.  ECF No.

8    7 at 4-13.  Broadly, Plaintiff advances three arguments related to this contention:

9    first, that the ALJ merely summarized the medical evidence without explaining

10   why it undermined Plaintiff's allegations; second, that the ALJ failed to

11   contextualize reports showing improvement of Plaintiff's symptoms with physical

12   therapy; and third, that the ALJ's focus on Plaintiff's recreational activities was

13   misplaced.  *Id.*  The Court finds that none of these contentions support reversal.

14   **A.    Legal Standard for Evaluating Symptom Testimony**

15   An ALJ engages in a two-step analysis in deciding whether to credit a

16   claimant's subjective symptom testimony.  SSR 16-3p, 2016 WL 1119029, at *2.

17   "First, the ALJ must determine whether there is 'objective medical evidence of an

18   underlying impairment which could reasonably be expected to produce the pain or

19   other symptoms alleged.'" *Molina*, 674 F.3d at 1112 (quoting *Vasquez v. Astrue*,

20   572 F.3d 586, 591 (9th Cir. 2009)).  "The claimant is not required to show that [the

claimant's] impairment 'could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom.'" *Vasquez*, 572 F.3d at 591 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citations omitted). General findings are insufficient; rather, the ALJ must identify what symptom claims are being discounted and what evidence undermines these claims. *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

Factors to be considered in evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, an individual receives or has

received for relief of pain or other symptoms; (6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.  SSR 16-3p, 2016 WL 1119029, at *7-*8; 20 C.F.R. § 404.1529(c).  The ALJ must "consider all of the evidence in an individual's record" in determining "how symptoms limit ability to perform work-related activities."  SSR 16-3p, 2016 WL 1119029, at *2.

In Plaintiff's case, the ALJ found that while some of his physical impairments could be reasonably expected to produce his alleged symptoms, other allegations regarding the intensity, persistence, and limiting effects of those symptoms were inconsistent with the objective medical evidence and related record evidence.  Tr. 28.

**B.    Consideration of the Medical Evidence**

Plaintiff first argues that the ALJ did not properly consider the objective medical evidence supporting his claims.  ECF No. 7 at 6.  He claims that the ALJ appropriately noted his allegations, but failed to distinguish between findings that were supportive of his claims and those which were inconsistent with his allegations.  *Id.* at 7.  He presses that this approach is inconsistent with the Ninth Circuit's decision in *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020).

In *Lambert*, the Ninth Circuit determined that the ALJ erred in rejecting a

claimant's subjective symptom testimony because the ALJ failed to specifically identify what portions of the claimant's testimony he found not credible and failed to explain what evidence specifically undercut that testimony. *Id.* The ALJ in *Lambert* summarized the claimant's medical evidence, and then offered big picture four reasons for rejecting her claims: (1) her treatment was not of the kind one would expect for a completely disabled individual; (2) the record reflected significant gaps in her treatment history; (3) claimant's use of medications did not suggest more limiting impairments than those identified by the ALJ; and (4) that medications had been relatively effective in controlling her symptoms. *Id.* at 1270. The court held that these four "high-level" reasons were insufficient to support discrediting the claimant's subjective pain complaints, stating, "'providing a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'" *Id.* at 1278 (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)).

As Defendant correctly argues, the ALJ's decision here does not suffer from the same defects as those in *Lambert*. Unlike the *Lambert* ALJ, who failed to differentiate between supportive and non-supportive medical evidence, the ALJ here explained why the objective medical and other record evidence did not fully corroborate Plaintiff's allegations of right shoulder pain, back pain, knee pain, and arthritis.

As to the objective medical evidence of Plaintiff's shoulder pain, the ALJ reported:

> The claimant continued to seek treatment for right shoulder pain after his alleged onset . . . *However, the objective medical evidence is not consistent with any manipulative limitations* . . . [Plaintiff] rated his pain as a two to three out of ten. He denied numbness or tingling. On exam, he had no edema, no tenderness to palpation, and he had 5/5 strength with pain on external rotation against resistance . . . His sensation was intact to light touch. Dr. Miller found the claimant did not have any significant rotator cuff injury or structural injuries which would require surgery. He recommended continued progression with physical therapy and home exercises on the shoulder.

Tr. 29 (emphasis added).

The foregoing is not just a summary, but an explanation for why the ALJ found Plaintiff's pain reports inconsistent with the medical record, which showed a normal range of motion with pain against resistance, normal sensation, and no need for surgery. *Id.* Whether or not Plaintiff agreed with these stated reasons, they were specific, objective medical findings that the ALJ believed to undercut his claims, not a mere synopsis of the medical records. *Compare Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) (holding an ALJ must not simply recite the medical evidence).

The ALJ identified similar medical record evidence which contradicted Plaintiff's reports of back pain, leg pain, and diabetes mellitus with neuropathy. The ALJ explained that after Plaintiff's completion of physical therapy, his

medical records noted that his lower back pain and knee discomfort "were all limited in nature and he was able to resolve them without assistance," and that he did not require the use of a wheelchair or walker for a year. Tr. 29. The ALJ also wrote:

> On February 21, 2022, the claimant saw Cameron Ritchie, P.A.-C., an orthopedics specialist. On exam, the claimant walked with a normal, non-antalgic heel to toe gait. On the right, he had 4/5 strength in hip flexors, quadriceps, knee extensor, and knee flexion. He had 5/5 strength in all other muscles tested . . . [T]he objective findings of the evaluation, such as normal gait, and intact sensation, are not consistent with the claimant's alleged severity of his limitations.

Tr. 30.

Later, the ALJ added that the Plaintiff "had no limp" during his diabetes exam, *id.*, and again emphasized his wife's claims of his knee pain were inconsistent with the overall objective medical evidence, noting that PA Ritchie's exam showing a normal gait. Tr. 32. Contrary to Plaintiff's assertions, these specific findings do not leave the Court guessing as to what medical evidence the ALJ believed to contradict his symptom testimony.

Finally, the ALJ offered supportive medical evidence for why she was rejecting Plaintiff's symptom reports related to his rheumatoid arthritis. Specifically, she explained that Plaintiff had no joint pain, swelling, edema, clubbing, sensation loss, or weakness on exam in both February and September 2021; that his Sulfasalazine monotherapy appeared to be working; and that he "was

1   in clinical remission." Tr. 31.  The position of these findings within the ALJ's

2   broader analysis—after the ALJ's summary of Plaintiff's self-reports and her

3   notation that his statements were inconsistent with the record evidence—

4   establishes that they were not offered as a mere summary of Plaintiff's medical

5   record, but instead as undercutting his claims.  As such, the Court finds that

6   Plaintiff's case does not suffer from a *Lambert* style defect.

7         **C.    Physical Therapy Reports**

8         Plaintiff also challenges the ALJ's discussion of his improvement of back

9   and knee pain with physical therapy. ECF No. 7 at 9-12.  According to Plaintiff,

10  his discharge from in-home therapy was not the end of his subjective back pain,

11  and he still could not walk or stand on a sustained basis. *Id.* at 11.  He alleges that

12  the ALJ did not sufficiently explain why she was rejecting these symptom reports

13  on the basis of his physical therapy discharge or account for the fact that his

14  reported limitations were incompatible with light work. *Id.* at 11-12.

15        The Court disagrees with Plaintiff's claim that the ALJ did not figure his

16  reports of being unable to stand or walk for continuous periods of time into her

17  report or that she rejected them without explanation.  The ALJ accounted for

18  Plaintiff's claim that his sciatica made "moving, walking, bending, stooping and

19  standing painful and sometimes forced him to use a wheelchair or walker," Tr. 28,

20

and noted that his wife had endorsed the same limitations, Tr. 31.  She also

recounted his testimony that:

> [H]e had neuropathy in his feet and could not feel his feet, and this
> resulted in him falling sometimes.  The claimant testified that he could
> walk for a half of a city block and stand for 15 to 20 minutes before he
> needed to sit down.  He stated that he used a scooter when available,
> and otherwise, walking around the store would cause an exacerbation
> of back pain for two to three days.  The claimant testified he shifted
> positions frequently.  He stated he spent 30 to 40 percent of his day
> sitting, 30 to 40 percent of his days on his feet, and the rest of the time,
> he was moving around, stretching.

Tr. 28.

Despite noting these claims, the ALJ determined that Plaintiff's

improvements with physical therapy had mitigated some of these symptoms,

writing:

> The claimant was discharged from home health physical therapy on
> April 26, 2021.  It was found the claimant had met all of his goals, and
> he was noted to be independent with his home exercise program.  He
> was able to safely negotiate the stairs that led from his home.  He . . .
> did not feel that he required additional outpatient care.  At this time, it
> was noted the [claimant] continued to get some low[er] back pain . . .
> [but] indicated that [this] [was] limited in nature, and he was able to
> resolve [it] without assistance . . . While the [claimant] was noted to be
> using a wheelchair and walker in January 2021, the claimant did not
> require their use for 12 months.

Tr. 29.

The foregoing shows that the ALJ considered Plaintiff's continued

subjective pain complaints, but discounted them based on his improvement with

1    in-home patient therapy, self-reports of improvement, and desire not to pursue

2    outpatient care.  Tr. 29.  Plaintiff argues that the physical therapy evidence only

3    demonstrated that "he was no longer housebound by his pain."  ECF No. 7 at 11.

4    However, as the ALJ discussed, Plaintiff's reports of improvement and choice not

5    to seek further outpatient treatment indicated that his symptoms were mitigated.

6    *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (an ALJ may reject

7    a claimant's symptom reports when the claimant responded favorably to

8    conservative treatment, including physical therapy).  Additionally, as discussed

9    above, the ALJ did not discount Plaintiff's self-reports merely on his improvement

10   with physical therapy; she also appropriately found that some of his symptom

11   testimony was inconsistent with the objective medical record evidence.

12       Relatedly, the Court also disagrees with Plaintiff's assertion that the ALJ

13   failed to account for his alleged back and leg pain limitations in finding him to be

14   capable of light work.  Because the ALJ found Plaintiff's symptom testimony

15   lacked credibility, she was not required to account for those symptoms in assessing

16   his RFC.  *See Marilyn P. v. Comm'r of Soc. Sec.*, C19-5703-MLP, 2021 WL

17   977713, at *4 (W.D. Wash. March 16, 2021) ("[T]he RFC is based only on

18   medically determinable impairments."); *see also* Tr. 27 (noting that the RFC was

19   based on symptoms consistent with the objective medical evidence).  Further,

20   although the ALJ found Plaintiff was capable of light work, she nevertheless

accommodated for Plaintiff's claimed limitations in questioning the VE, who

testified that the jobs of small products assembler, marker, and routing clerk still

existed in sufficient numbers in the national economy for employees who needed

the option to alternate between sitting and standing every 30 to 60 minutes. Tr. 34,

62. Accordingly, the ALJ did not err in her discussion of how physical therapy

mitigated Plaintiff's symptoms or her determination of the RFC.

### D.    Recreational Activities

Next, Plaintiff argues that the ALJ improperly focused on his engagement in

certain recreational activities as a basis for finding his symptom testimony

unreliable. In her opinion, the ALJ stated that in May 2021, Plaintiff deep-water

snorkeled in the Bahamas while on vacation. Tr. 25, 31. She also stated that

Plaintiff reported that he enjoyed woodworking and made wooden flags weighing

less than ten pounds with assistance from his family and reported no hand

problems from that activity. Tr. 31. Additionally, the ALJ observed that Plaintiff

helped take care of his wheelchair-bound father-in-law and that he participated in

other household tasks including preparing quick meals, doing light chores like the

dishes and laundry, and shopping for groceries online. *Id.*

Plaintiff asserts that the ALJ should not have discussed these activities in

discrediting his symptom testimony because his self-reports were not inconsistent

with his chosen recreational outlets and the ALJ failed to explain how these activities were inconsistent with his symptoms.  ECF No. 7 at 13-14.

The Court agrees with Plaintiff that the ALJ's discussion of his snorkeling and caretaking activities was inadequate.  "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaint." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  It is insufficient for the ALJ to find that a claimant's activities are "inconsistent in some unspecified way" with his symptom testimony.  *Id.*  Understandably, the ALJ might have believed it self-evident that the activities of deep-water snorkeling and caretaking were inconsistent with Plaintiff's alleged symptoms.  After all, it would not be an untoward inference to find that one's shoulder, leg, and knee pain would be exacerbated by those kinds of physically intensive and demanding activities.  But the ALJ did not explain why she believed that those activities were inconsistent with Plaintiff's reports, and the Court cannot substitute its own judgment for the ALJ's.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  It also appears that these activities had a temporal limitation; for instance, the evidence suggests that the snorkeling was not a regular hobby of Plaintiff's, but a one-time vacation activity which likely did not last for a considerable period of time.  *See Ghanim*, 763 F.3d 1165 (daily activities may support an adverse credibility finding "if a claimant is

able to spend a *substantial part of his day* engaged in pursuits involving the performance of physical functions that are transferable to a work setting.") (quoting *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (emphasis added)). However, such error was harmless, because, as discussed above, substantial evidence—namely, objective medical evidence and reports of improvement with conservative treatment, such as physical therapy—exists in support of the ALJ's credibility determination.

Differently, the Court finds that the ALJ's discussion of Plaintiff's woodworking hobby was supported by clear and convincing evidence. As the ALJ explained, woodworking requires the use of one's hands, which was inconsistent with Plaintiff's reported fine motor limitations and symptoms. Tr. 31. Because the ALJ sufficiently explained why this hobby was inconsistent with Plaintiff's alleged symptom reports and the medical evidence suggested his arthritis was in clinical remission at this stage, the Court finds the ALJ's decision on this point was supported by clear and convincing evidence.

## II. Evaluation of PA Cameron Ritchie's Report

Finally, Plaintiff challenges the ALJ's discussion of PA Ritchie's medical report. PA Ritchie physically examined Plaintiff for his back pain on February 21, 2022. Tr. 1512. He recommended Plaintiff use a lumbar brace to help increase his stamina and reduce pain and discussed with Plaintiff the importance of losing

1    weight and gaining core strength.  *Id.*  PA Ritchie also added:

2       [Plaintiff] is deciding if he should apply for Social Security [benefits]
        at this time because he cannot return to work as a correctional officer.
3       He may benefit from a vocational counselor to help find [if] a suitable
        job is available.  We will look into this and see what options he may
4       have at this time.

5    *Id.*

6       In summarizing PA Ritchie's report during her discussion of the medical

7    evidence, the ALJ wrote:

8       The undersigned finds his opinion to be somewhat persuasive, in that
        this opinion clearly establishes that the provider does not think the
9       claimant is totally disabled but rather there is other work he can do, just
        not that of a correction officer.  The undersigned also notes that the
10      objective findings of the evaluation, such as a normal gait, and intact
        sensation, are not consistent with the claimant's alleged severity of his
11      limitations.

12   Tr. 30.

13      Plaintiff presses that the ALJ's analysis was erroneous for two reasons.  ECF

14   No. 7 at 15-16.  First, he claims that the ALJ improperly found it relevant that PA

15   Ritchie thought Plaintiff was not totally disabled, but capable of some work, even

16   though eligibility for Title II benefits does not require "total disability."  *Id.* at 15.

17   Second, he argues that PA Ritchie did not offer a functional assessment, so his

18   statement that Plaintiff was capable of some work "may have been based on a

19   belief that Plaintiff would be able to perform sedentary-type jobs," which would

20   support a finding of disability under the Medical Vocational Guidelines.  *Id.*

1    Defendant responds that it was reasonable for the ALJ to infer PA Ritchie's

2    statement was consistent with a finding of non-disability because it indicated

3    Plaintiff was capable of performing other work in the national economy.  ECF No.

4    9 at 11.  Alternatively, Defendant argues that PA Ritchie's statement was not a

5    medical opinion under the relevant regulations, but instead "other medical

6    evidence" which the ALJ was not required to evaluate the persuasiveness of, and

7    that therefore any error in doing so was harmless.  *Id.* at 11-12.

8    The Court finds Defendant's interpretation of the ALJ's discussion of PA

9    Ritchie more persuasive.  The Court does not take the ALJ's mention of "total

10    disability" to mean that she believed Plaintiff needed to be completely

11    incapacitated in order to qualify for Social Security benefits. Tr. 30.  In context, it

12    is clear that the ALJ was instead only making a finding that Plaintiff was capable

13    of some other work.  Plaintiff somewhat concedes this point, but argues in the next

14    breath that the ALJ's reliance on this analysis was misplaced because PA Ritchie

15    could have meant that Plaintiff was only capable of sedentary work, which would

16    have required a finding of disability.  This argument is untenable.  Even if PA

17    Ritchie's examination notes were consistent with a finding that Plaintiff could only

18    perform sedentary work—and that argument is wholly speculative—the ALJ's

19    recitation of that fact was, at bottom, harmless error.  As discussed above, other

20    objective medical evidence supported Plaintiff's ability to perform light work,

including the unchallenged opinions of other medical providers. *See, e.g.*, Tr. 32-33 (finding the opinion of medical consultant Dr. Howard Platter persuasive, which determined that Plaintiff was capable of light level work). Accordingly, the ALJ's error in mentioning that PA Ritchie noted Plaintiff could return to work, if it existed at all, was harmless because it was otherwise supported by clear and convincing evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes that the ALJ's decision is supported by substantial evidence and free from harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's motion seeking a reversal of the order of the Social Security Commissioner (ECF No. 7) is denied. The final decision of the Social Security Commissioner is **AFFIRMED.**

The District Court Executive is directed to enter judgment in favor of Defendant, furnish copies to counsel, and **CLOSE** the file.

DATED November 13, 2023.



THOMAS O. RICE
United States District Judge

ORDER AFFIRMING DENIAL OF TITLE II BENEFITS ~ 22